NOT FOR PUBLICATION (Document No. 6)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| FEDERAL INSURANCE COMPANY, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> SECURE CARGO CORPORATION, : <br> : <br> Defendant. : | Civil No. 12-851 (RBK/AMD) <br><br> **OPINION** |

**KUGLER**, United States District Judge:

This matter arises out of Plaintiff Federal Insurance Company's ("Plaintiff") claims against Secure Cargo Corporation ("Defendant") for negligent interstate shipping of goods. Currently before the Court is Plaintiff's motion for default judgment under Federal Rule of Civil Procedure 55(b)(2) (Doc. No. 6). For the reasons stated herein, the Court will grant Plaintiff's motion and direct Plaintiff to appear for a hearing to determine a proper award of damages.

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

In February 2011, Win Transport Incorporated, a transportation broker not a party to this litigation, entered into a Carrier-Broker agreement with Defendant in which Defendant agreed to transport frozen seafood cargo from Mullica Hill, New Jersey to Miami, Florida and frozen meat cargo from Pennsauken, New Jersey to Miami, Florida. *Id.* ¶¶ 4-5. On February 25, 2011, Win

---

[1] As a consequence of the Clerk of Court's entry of default against Defendant on June 5, 2012, and for purposes of deciding the instant motion for default judgment, the Court accepts as true the factual allegations in Plaintiff's Complaint, save those relating to the amount of damages. *United States v. Pinsky*, No. 10-2280, 2011 WL 1326031 at *2 (D.N.J. Mar. 31, 2011) (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)).

took possession of this cargo in good order in New Jersey. *Id.* ¶ 6. However, when the goods arrived at their Florida destination, they were not in the same good order and condition. *Id.* ¶ 8. From these facts, Plaintiff concludes that Defendant was negligent in its handling of this cargo, and that it breached its duties and obligations as a common carrier and bailee. *Id.* ¶ 9.

Plaintiff, a transportation insurer, reimbursed Win for its losses relating to this shipment. *Id.* ¶ 1. Consequently, it became subrogated to Win's rights and brought suit on February 13, 2012 to recover from Defendant. Plaintiff issued a summons on Defendant on April 19, 2012 (Doc. No. 4). On June 5, 2012, having received no response from Defendant, Plaintiff sought, and subsequently received, the Clerk of Court's entry of Default under Federal Rule of Civil Procedure 55(a) (Doc. No. 5). Shortly thereafter, Plaintiff filed the instant motion for default judgment (Doc. No. 6).

## II.     DISCUSSION AND ANALYSIS

Federal Rule of Civil Procedure 55(b)(2)[2] allows the Court, upon a plaintiff's motion, to enter default judgment against a defendant that has failed to plead or otherwise defend a claim for affirmative relief. While the decision to enter default judgment is left principally to the discretion of the district court, there is a well-established preference in this Circuit that cases be decided on the merits rather than by default whenever practicable. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180-81 (3d Cir. 1984). Consequently, the Court must address a number of issues before deciding whether a default judgment is warranted in the instant case. If it finds default judgment to be appropriate, the Court's next step is to determine a proper award of damages.

### A.     Appropriateness of Default Judgment

####      i.     *The Court's Jurisdiction*

---

[2] Throughout this opinion, the Court will refer to the Federal Rules of Civil Procedure simply as the "Rules."

First, the Court must determine whether it has both subject matter jurisdiction over Plaintiff's cause of action and personal jurisdiction over Defendant.  *U.S. Life Ins. Co. in City of New York v. Romash*, No. 09-3510, 2010 WL 2400163 at *1 (D.N.J. June 9, 2010).  Verifying the Court's jurisdiction is of particular concern where, as here, the defaulting party has failed to make any sort of appearance or submit any responsive communication to the Court.

In this case, Plaintiff appears to assert state law negligence and breach of contract claims against Defendant.  However, the Complaint also seeks relief under a federal statute involving the interstate shipment of goods, 49 U.S.C. § 11706.  Compl. ¶ 3.  Consequently, the Court has federal question subject matter jurisdiction over Plaintiff's claims and supplemental jurisdiction over any state law claims.  *See* 28 U.S.C. § 1331; 28 U.S.C. § 1367(a).

In addition, the Court must consider whether it may exercise personal jurisdiction over Defendant.  Sitting in New Jersey, the Court may exercise personal jurisdiction over an out of state defendant only to the extent authorized by the state's long arm statute.  Fed. R. Civ. P. 4(k)(1)(A). The New Jersey statute, however, is "intended to extend as far as is constitutionally permissible."  *DeJames v. Magnificence Carriers, Inc.,* 654 F.2d 280 (3d Cir.1981).  Thus, the Court applies general principles of federal constitutional law in order to determine whether it may exercise jurisdiction over Defendant.

The exercise of personal jurisdiction over a non-resident defendant is dependent upon that defendant establishing "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Telcordia Tech Inc. v. Telkom SA Ltd.,* 458 F.3d 172, 177 (3d Cir.2006) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).  When a defendant establishes such minimum contacts, the Court may exercise so-called "specific personal

jurisdiction" over that defendant for claims arising out of those contacts. *Carteret Sav. Bank, FA v. Shushan,* 954 F.2d 141, 149 (3d Cir.1992). In determining whether specific personal jurisdiction exists in a given claim, the principal inquiry is whether the defendant, by some affirmative act, has "purposely avail[ed] itself of the privilege of conducting activities within the forum state." *Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.,* 988 F.2d 476, 482 (3d Cir.1993) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)).

In this case, Defendant sent its carriers into New Jersey in order to fulfill its Carrier-Broker Agreement with Win. *See* Compl. ¶ 9. This is the sort of affirmative act demonstrating that Defendant "purposely avail[ed] itself of the privilege of conducting activities within the forum state." *See Grand Entertainment Group*, 988 F.2d at 482. Further, the instant cause of action arises out of these very contacts. The Court may therefore exercise personal jurisdiction over Defendant.

    *ii.   Entry of Default*

Second, the Court must ensure that the entry of default under Rule 55(a) was proper. Rule 55(a) directs the Clerk of Court to enter a party's default when that party "against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." In this case, Defendant was properly served with a summons and complaint on April 19, 2012 (Doc. No. 4). Thereafter, they failed to respond to the Complaint within twenty-one days of service as required under Rule 12(a). Plaintiff attested to these facts in an affidavit attached to its request for default (Doc. No. 5). Accordingly, the Clerk's entry of default under Rule 55(a) was appropriate.

    *iii. Plaintiff's Cause of Action*

Third, the Court must determine whether Plaintiff's Complaint states a proper cause of action against Defendant. In conducting this inquiry, the Court accepts as true a plaintiff's well-pleaded factual allegations while disregarding its mere legal conclusions. *See Directv, Inc. v. Asher*, No. 03-1969, 2006 WL 680533 at *1 (D.N.J. Mar. 14, 2006) (citing 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2688, at 63 (3d ed. 1998)).

As stated above, although Plaintiff appears to state common law claims for negligence and breach of contract, its Complaint also references 49 U.S.C. § 11706. While this statute is inapplicable to the instant dispute because it involves liability for rail carriers rather than motor carriers, the Court, giving Plaintiff the benefit of the doubt, understands the Complaint to state a claim under 49 U.S.C. § 14706, known as the Carmack Amendment.[3]

The Carmack Amendment establishes a carrier's liability for the actual loss or injury it causes to property received for transport. 49 U.S.C. § 14706(a)(1). In order to state a claim under this statute, a plaintiff must show: "(1) delivery of the goods to the initial carrier in good condition, (2) damage of the goods before delivery to their final destination, and (3) the amount of damages." *Beta Spawn, Inc. v. FFE Transportation Services, Inc.*, 250 F.3d 218, 223 (3d Cir. 2001).

In this case, the Court finds that Plaintiff's Complaint states a valid Carmack Amendment claim against Defendant. The factual allegations in the Complaint are as follows:

---

[3] The Court surmises that Plaintiff may have made a typographical error in its Complaint. It reaches this conclusion with greater confidence upon noting that Carmack Amendment actions are the exclusive avenue for relief for the type of injury that Plaintiff alleges, given that this federal statute preempts related state law claims. *See Lewis v. Atlas Van Lines, Inc.*, 542 F.3d 403, 407-08 (3d Cir. 2008); *see also Orlick v. J.D. Carton & Son, Inc.*, 144 F. Supp. 2d 337, 345 (D.N.J. 2001) (observing that the Carmack Amendment preempts state law causes of action involving "loss of goods or damage to goods caused by the interstate shipment of those goods by a common carrier") (citing *Adams Express Co. v. Croninger*, 226 U.S. 491, 505-06 (1913)).

>1.  Defendant entered into an agreement with Win to transport certain cargo from New Jersey to Florida on February 18, 2011. Compl. ¶ 4.
>
>2.  Win took possession of this cargo in good order and condition on February 25, 2011.  *Id.* ¶¶ 6-7.
>
>3.  The cargo was not delivered to the recipients in Florida in the same good order and condition as when it was received.  *Id.* ¶ 8.
>
>4.  Plaintiff sustained damages as a result in the amount of $173,307.63.

The Court finds that these allegations are just enough to state a claim under 49 U.S.C. § 14706(a)(1).

>    *iv.*    Emcasco *factors*

Fourth, and lastly, the Court must consider the so-called *Emcasco* factors when determining whether to enter default judgment.  The Court considers: (1) whether the defaulting party has a meritorious defense; (2) the prejudice suffered by the plaintiff seeking default; (3) the defaulting party's culpability in bringing about default.  *Bridges Financial Group, Inc. v. Beech Hill Co., Inc.*, No. 09-2686, 2011 WL 1485435 at *3 (D.N.J. Apr. 18, 2011) (citing *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)).  In this case, all three of these factors militate in favor of granting a default judgment.  First, there is no indication that Defendant has a cognizable defense to Plaintiff's allegations of negligent transport.  *See Hill v. Williamsport Police Dept.*, 69 Fed. App'x 49, 52 (3d Cir. 2003) ("Because the defendants had not yet filed an answer, the District Court was unable to evaluate whether they had a litigable defense, [rendering this first] factor . . . inconclusive.").  Second, because Defendants have wholly failed to answer the Complaint or otherwise appear, Plaintiff suffers prejudice if it doesn't receive a default judgment because it has no alternative means of vindicating its claim against the defaulting

party.  *See Directv v. Asher*, No. 03-1969, 2006 WL 680533 at \*2 (D.N.J. Mar. 14, 2006).  Third, the Defendants' failure to respond permits the Court to draw an inference of culpability on their part.  *See Surdi v. Prudential Ins. Co. of Am.*, No. 08-225, 2008 WL 4280081 at \*2 (D.N.J. Sept. 8, 2008).  Thus, the *Emcasco* factors weigh in favor of entering default judgment.

    *v.*    *Conclusion*

In light of the foregoing analysis, the Court finds that Plaintiff is entitled to a default judgment against Defendant.

**B.**    **Damages**

Plaintiff seeks actual damages of $173,307.63, plus interest.  Pl.'s Statement of Damages (Doc. No. 6).  It has failed, however, to submit any documentation supporting this figure.  As the Court is not bound to accept as true Plaintiff's allegations concerning damages, *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990), it will have to determine a proper award at a later hearing.  *See* Fed. R. Civ. P. 55(b)(2)(B).

**III.**    **CONCLUSION**

For the reasons stated above, the Court will grant Plaintiff's motion for default judgment and direct Plaintiff to appear for a hearing to determine a proper award of damages.  An appropriate order shall issue today.

Dated:   3/25/13                                                         /s/ Robert B. Kugler
                                                                                  ROBERT B. KUGLER
                                                                                  United States District Judge